Paul Turner. I'm an attorney for David Harrington. I'm with the Federal Public Defender Office in Las Vegas. I'd like to reserve two minutes, Your Honor, if I might for rebuttal. Obviously, I'd be happy to respond to any questions the Court has in any order, but in lieu of that, I will begin with the issues that's presented in my brief, at least the first two issues, and then I may jump ahead a little bit. Mr. Harrington committed, according to the jury, Mr. Harrington committed what I've, what we say is one kidnapping, not two kidnappings. This is a double jeopardy claim that we've made. It's our first claim. As Your Honor's, I'm sure, aware, the double jeopardy clause of the Fifth Amendment encompasses a number of situations, one of which is that no one can be punished twice for the same crime. And what we say happened here was that one kidnapping occurred, yet Mr. Harrington has two sentences, a ten-year sentence and a five-year sentence, which are running consecutively. And we say that's a clear violation of the Fifth Amendment double jeopardy clause. Isn't this really a question for the Nevada Supreme Court to decide what Nevada law provides? Your Honor, you're absolutely right that the first order of business, so to speak, in this kind of case is for the Nevada Supreme Court or for the State of Nevada to tell us, tell the Court, what the unit of prosecution is for kidnapping. I think the Court's entitled to look at statutory law, case law, whatever law we've got in Nevada. In this case, if you look at the opinion of the Nevada Supreme Court, the Order Dismissing Appeal, on direct appeal, they cite to the Stolle case, if I'm pronouncing it right, which we submit has nothing to do with the unit of prosecution of kidnapping. It's an interesting case. They aren't obligated to cite to anything, aren't they? I mean, they are the ones that are empowered to interpret Nevada law. So they could simply say, it's two, end of story, no citation. The fact that they may have gotten it wrong is something that I'm not sure that we can reach. Well, Your Honor, I think it's more than just getting it wrong. It's not addressing the issue. They don't mention the statute itself. They don't even mention the term unit of prosecution. There's no analysis there at all. They don't really do what they're supposed to do in this context. I think you're entitled to look beyond that to other case law that exists in the State, including the Larson case, which we cite, which is a unit of prosecution case, which does give you guidance as to what kidnapping means in Nevada. I think the mere fact that they dismiss a claim doesn't, if so, render it completely unreviewable by this Court. Well, Staley doesn't seem, doesn't look irrelevant as far as I can see. I mean, if you take Staley for what it seems to be saying, you get a kidnapping when he takes a person off and injures a person. And then they say, well, it's not a second kidnapping if you bring the person back to a place of safety. That's okay. But that certainly bears the implication if you then decided to take the person off to another dangerous place and hurt them, that would be a second kidnapping. So you may not like it, but it strikes me that that's what you can infer from that case. And here, if we believe him in part, if we believe part of what he says at least, he does take her up to the mountains and he does what we all know he does up there one way or another. Something happens very bad to her up there. And then he comes back and he goes home. And he goes and changes his clothes and is going to take her home then. And he's on his way, or he's going to take her to another place or home. And he's on his way and a police car comes along and he turns off or something like that. And he turns off and that's when the second frolic takes place. Whatever that frolic was, that's when it takes place. So why, what's irrational about his state saying, well, he kidnapped her once and beat her up, beat her to bloody pulp. He brought her back. He stopped, changed his clothes, going to take her home. And then he went off on another frolic, decided, nope, I think what I'll do is I'll take her off again and do some more to her. What's wrong with that? A couple of things I'd just like to respond to, Your Honor. That's certainly an interpretation that you'd be more than entitled to make if you choose to do that. A couple of things about it, though, and I think you're well aware of this. The victim in the case indicates that there was no stop at all. And of course, regrettably to my client, the jury believed the victim obviously on essentially everything in the case. Well, but we don't know that, do we? Well, he lost on everything in the case. No, we don't know it for sure, but it sort of looks that way. Also, I think the general view of kidnapping found in the Larson case, the specific view there, and certainly the view of kidnapping generally at common law and otherwise, is that kidnapping starts when the person is put under detention, if you will, or put under duress, and it doesn't end until that duress, that detention has been completed. And I think the mere fact, even assuming my client's testimony was accurate, the mere fact that there may have been some very short-term stop at his house doesn't stop the kidnapping, unless there's some evidence that the victim was released from this bondage, if you will, and there's no evidence to indicate that, certainly no evidence presented by the state of Nevada. She stayed out in the car when he marched into the house to change his clothes and stuff. She's out in the car by herself. Well, that's a possibility, Your Honor. I don't know that. I don't think the record indicates that, but I could be wrong on that. I thought it did indicate that when he stopped at the home, in fact, I thought one of the attorneys asked and said, well, you know, where was the victim when he went in to change his clothes? And the answer was, she just sat out there in the car, because of course, the position was, she wasn't a victim, but that's a different issue. She just sat out in the car and waited for him. Historically, as I said, kidnapping has been a crime that's a continuing crime. There are a number of interesting cases in that area. In Venue, for example, Supreme Court of the United States has made it very clear that kidnapping is not, you can't separate it geographically by various locations. It starts and it has an ending to it, but it's not the mere fact that it crosses state lines, the mere fact that all kinds of events occur does not end the kidnapping necessarily. And the Larson case really makes that very clear, because in Larson, the perpetrator actually leaves the scene and leaves the victim at a bus stop and totally goes away, and yet the Nevada Supreme Court holds that's one kidnapping. That case cannot be squared with this case, in my judgment. And that was the case that Nevada Supreme Court should have looked at, and that's the case that I think you're entitled to look at, because that reflects what Nevada law is on the unit of prosecution. The second point that we're arguing here deals with the search of the vehicle. As your Honors know, this is a case where my client's been convicted of battering somebody with a deadly weapon, and there are two counts where a deadly weapon is involved, the weapons purportedly being a knife and a screwdriver. The knife and screwdriver were in his vehicle, if you will, when he was, when he, he actually called 9-11. This is a self-surrender case. And when they went to his home, went to her home, I believe the vehicle was there and it was impounded on the 21st of October 1993. On the 23rd of October 1993, I'm sorry, I'm sorry, I'm incorrect, on the 18th of October 1993. Three days later, my client was appointed counsel on the 21st, and it's clearly in the court record that that occurred. The next day, without going to his counsel, the state of Nevada solicited an improper consent from my client to enter the vehicle, and did indeed do that on the 25th of October. So within a week, this scenario had occurred. The district court, federal district court, of course, has held, has acknowledged in essence that obviously this was an improper search, but it's gone on the Nix doctrine, the exception dealing with inevitable discovery, and has held that since there was probable cause for the search, that that obviates the problem here. And I've submitted under the Mejia case of this court that that doesn't obviate the problem here, that the mere fact that there was probable cause does not override the need to get a warrant and does not make an illegal consent illegal. If so, and as this Court has said very clearly, the Fourth Amendment basically disappears, because if you can just simply bypass getting a warrant every time there's probable cause, really there's no Fourth Amendment anymore. It doesn't exist. And we'd submit the district court simply is wrong here, that it wasn't aware apparently, or was the Mejia case, and obviously missed it. That's our position on this, and that search was improper, that those weapons should not have been admitted into evidence. You then move on to the issue, of course, of what prejudice that had on the case. And in this case, interestingly, in closing argument, the prosecutor pounded, pounded on the table with the screwdriver. He obviously felt that was important, or he wouldn't have done that. That's kind of an unusual thing to see in a courtroom, a screwdriver pounded into a table. Obviously he thought that was important to get to the jury. The point, and obviously as we all know what he was doing, was trying to present the case in the most egregious way possible. And I would submit that this case, although maybe superficially a clear-cut case, was not by any means a clear-cut case, particularly on sexual assault. You have no physical evidence of sexual assault, and you've got two witnesses diametrically opposed in what they're saying. And notwithstanding the unpleasant context of this case, I would submit that this was an important, crucial issue, and that those weapons and that pounding on the table could have had an effect on this jury and probably did to sway it on the sexual assault. I see my light is on, and I'll sit down if I can have my rebuttal. Thank you. I should state when I said that Staley had certain facts, I was really talking about Larson. I'm sorry. Hang on. Yes. Thank you. May it please the Court, Counsel, my name is Robert Whelan. I'm a Senior Deputy Attorney General employed by the Office of the Attorney General of the State of Nevada. I have the privilege of representing the respondents in this particular matter addressing the kidnapping issue. First, the Nevada Supreme Court has very clearly said that there are two kidnappings here, dated on direct appeal, when the issue was initially presented as one of the sufficiency of the evidence. If we look at that, and if you examine the Staley case and the Staley case, the Larson case, and the Wright case, this case is in fact square with all of them. And as the Court's already noted, and Mr. I apologize, I can't remember his name right at the moment, Counsel has already pointed out the Nevada Supreme Court has said that. That determination is binding on this Court. And indeed, looking at this as was pointed out on direct appeal by the Nevada Supreme Court, when this was interpreted under sufficiency of evidence, if you look at the evidence that was in fact presented in this case, and the Wright most favorable to the prosecution, there are certainly indications in here where the jury could conclude that the first seizure ended, there were in fact two separate seizures. And that would be consistent with Nevada law under the definition NRS 200.310 sub 2 describing second degree kidnapping as the seizure, inveigling, taking, carrying away, or kidnapping of another person against, in any manner, held to service or detained against that person's will. So the argument that Counsel initially presented that because the jury didn't find that the kidnapping was done with the intent to either commit sexual assault or intent to commit battery causing substantial harm or something is in fact a red herring. Moving on to the second ground presented, the Federal District Court, I don't think you can say that they decided that the consent was involuntarily or improperly obtained. The real problem that Counsel has with this is that Counsel in the first instance has not proved or the petitioner has not proven at all that the evidence would have been suppressed. We don't know whether or not the officers in the first instance even knew that this obtaining of the search is not a testimonial circumstance. And even if this court, even if one were to examine this from the point of view as if the evidence had been suppressed, you have the following evidence which shows that there simply isn't any prejudice at all, apart from the inevitable discovery aspect. But the petitioner in this particular case, Mr. Harrington, admitting hitting her with the screwdriver. As a matter of fact, if you look at the transcript, I believe it's an excerpt of record 1115, he has shown a photograph of the victim's abdomen, which depicts the screwdriver handle mark, and he remarks, well actually I was trying to hit her in the legs or hit her somewhere else and I guess I just hit her there. So she testified, the victim testified to a screwdriver and the knife and the injuries. That excerpt of record 883. He admitted in his own testimony that a knife was involved, that excerpt of record 1110, and he admitted beating her with and without the screwdriver. As a matter of fact, at one point in time he admits he smacked her so hard in the car. On top of that, her own physical condition corroborates her testimony. She was beaten to a pulp. She had a dislocated jaw, she had demarks, she had to cut wounds from the knife. Therefore, even if, even if, the prosecution admits that she was beaten and the prosecution did not have the actual knife and the screwdriver, there is plenty of evidence to show that a screwdriver was used, he admitted it, he can't deny it now. He admitted a knife was involved, he can't deny that now. And frankly, after reading his testimony, his own testimony, it's impossible to conclude that he was prejudiced, even if this court should conclude that the screwdriver and knife should have been suppressed. There simply isn't any prejudice in this case. Counsel was not ineffective for failing to move to suppress the knife and the, the knife and the screwdriver. Counsel made some remarks with respect to kidnapping. Frankly, we are not concerned with how other jurisdictions construe kidnapping. Kidnapping is construed in accordance with Nevada law. It is entirely consistent. Unless the court has any other questions, I believe that's all I have to say. Thank you. Okay, thank you. The matter will stand submitted. And that, and, oh, we have a little rebuttal. I'm sorry. Yes. All morning, I appreciate that. Right, that's, you have a minute here. Thank you. Just, just a few items. Concerning the, the deadly weapon issue, the defense attorney indicated that the screwdriver pounded into the table had a devastating effect on the case. He's the guy who was there. He was the guy looking at that and having to deal with it in court. And to say that that was of no significance, I think, is wrong. He said it had significance. He was there and he was looking at it and watching it being done. I still say the Larson case, Your Honor, stands for the fact that kidnapping is a continuous offense in Nevada, clearly a continuous offense. And that the mere fact that you even abandon the victim at a bus stop, if that doesn't end a kidnapping, I don't see how a quick putting on of some clothes and continuing on to another location does. I'd also, my final comment would be that I have a claim in here for, for cumulative error. And this is a case where I think that, that claim is before the court and has some real merit and should seriously be looked at. Because we've got a number of claims here, I don't want to sandbag my opponents so I can't discuss the others. Yes. But this is a case where that's important. Okay. Thank you. Thank you so much for your argument. We appreciate it. The matter will stand submitted and will be in recess until tomorrow. Thank you.
judges: Fernandez, Paez, Clifton